In re Alan A. **WINDER** and Ruth **Winder**, Debtors.

**PEOPLE'S BANK, Movant,**

v.

**Alan A. WINDER, Ruth Winder and Jeffrey Sapir, Trustee, Respondents.**

**Bankruptcy No. 94–51103.**

United States Bankruptcy Court, D. Connecticut.

Sept. 14, 1994.

---

**MEMORANDUM OF DECISION
AND ORDER ON MOTION
TO DISMISS CASE**

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

In this contested matter the Movant, People's Bank (hereinafter "People's"), seeks to have dismissed the pending Chapter 13 case of Alan A. Winder and Ruth Winder (hereinafter "Debtors") on the basis of the Debtors' alleged ineligibility for relief under Chapter 13 pursuant to 11 U.S.C. § 109(e). Specifically, the subject motion alleges that the Debtors exceed that section's $350,000 secured debt ceiling. Because the record before the Court compels a conclusion that the Debtors own property with an aggregate value less than $350,000, they cannot, by definition, owe secured debts of more than $350,-000. Accordingly, this case will not be dismissed at this time on such basis.[1]

## II. FACTUAL BACKGROUND

On April 1, 1993, the Debtors commenced in this Court a voluntary Chapter 7 case (Case No. 93–51056), in which the Debtors received a discharge on August 2, 1993. That case is still open, although no adversary proceedings seeking to determine the dischargeability of debts are presently pending or were prosecuted therein.

On April 29, 1994, the Debtors commenced the present Chapter 13 case in this Court through the filing of a petition. The Debtors simultaneously filed bankruptcy Statements and Schedules which were executed by the Debtors under penalty of perjury. Schedule A—Real Property—disclosed that the Debtors' interests in *real* property at the petition date totalled $301,000, of which sum $295,000 was ascribed to the Debtors' family residence known as and numbered 56 Partrick Road, Westport, Connecticut (hereinafter the "Par-

Thomas W. Bucci, Willinger, Shepro, Tower & Bucci, P.C., Bridgeport, CT, for movant.

Michael Laux, Laux & Grant, Westport, CT, for debtors.

---

1. Because of the nature of the disposition of this matter, it is unnecessary for the Court to consider the more interesting question of the effect of a prior Chapter 7 discharge upon the secured debt ceiling of Section 109(e) where the value of property securing claims equals or exceeds $350,000. It is also not necessary for the Court to consider the effect of a prior Chapter 7 discharge on the $100,000 *unsecured* debt ceiling of Section 109(e) since that issue is not properly before the Court. Although the oral arguments of counsel may have touched upon this issue, it was not asserted as a ground for relief in the subject motion, and the motion was not amended to include it. Notwithstanding the foregoing, the Court briefly addresses this issue in fn. 5, *infra.*

trick Road Property"). Schedule B—Personal Property—disclosed that the Debtors' interests in *personal* property at the petition date totalled $32,610. Schedule D—Creditors Holding Secured Claims—scheduled the following creditors: People's Bank—$70,-631.81, Westport Bank & Trust Company (hereinafter "Westport")—$225,240.05, and Recoll Management Corp. (hereinafter "RECOLL")—$360,687.51. Schedule D further stated that no portion of the claims of People's and Westport was unsecured, while the unsecured portion of the RECOLL claim was $360,687.51, *i.e.* the entire scheduled claim amount.[2]

On May 18, 1994 the Debtors filed amendments to their Petition, Schedule D and Summary of Schedules. Schedule D was amended by replacing all claim amounts for RECOLL with "–0–"s. None of the amendments altered the property valuations previously stated in Schedules A & B. Also on May 18, Westport filed a proof of claim asserting a secured claim in the amount of $222,175.00. This proof of claim has not been objected to by the Debtors or any other party in interest.

At the hearing of this matter on June 15, 1994, no additional evidence of the value of the Debtors' interests in property was offered by either party. Therefore, aside from the Debtors' Schedules, there is no reliable record evidence of the value of such property interests.

## III. DISCUSSION

Bankruptcy Code Section 109(e) provides, in relevant part, as follows:

Only an individual with regular income that owes, on the date of the filing of the petition ... noncontingent, liquidated, unsecured debts of less than $100,000 and *noncontingent, liquidated, secured debts of*

less than $350,000 ... may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e) (emphasis supplied).

Code Section 506(a) provides, in relevant part, that:

[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured *claim* to the extent of the value of such creditor's interest in the estate's interest in such property ...

11 U.S.C. § 506(a) (emphasis supplied).

The task of the Court in this matter is to discern the amount of the Debtors' noncontingent, liquidated, secured debts as of the petition date. Since the United States Supreme Court has instructed that the Bankruptcy Code definitions of "debt" and "claim" are coextensive, *Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990), this Court looks to Section 506 of the Code for guidance in the resolution of this matter. This approach is consonant with rulings of the vast majority of courts construing the "unsecured debts" language of Section 109(e). *E.g., Brown & Co. Securities Corp. v. Balbus (In re Balbus),* 933 F.2d 246, 247 (4th Cir.1991); *Miller v. United States,* 907 F.2d 80, 82 (8th Cir.1990).

 Under Section 506(a) it is axiomatic that the total amount of secured claims asserted against a bankruptcy debtor's estate cannot exceed the aggregate value of that estate's interest in the property securing such claims. Upon the present record—in which the Debtors' Schedules are the only evidence of the value of the estate's interest in property[3]—the Court must conclude that the Partrick Road Property had a petition date value of not more than $295,000, and consequently, that petition date secured

---

2. Schedule A also states that the "3rd Mortgage" claim against the Partrick Road Property—undoubtedly that of RECOLL—has "NO EQUITY".

3. The case law endorses the use, and in some instances the exclusive use, of the Debtor's schedules in determining the amount of qualifying debt for purposes of Section 109(e) eligibility. *See, e.g., Pearson v. Comprehensive Accounting Corporation (Matter of Pearson),* 773 F.2d 751,

756 (6th Cir.1985). This is so because (1) the petition date is the reference point of both Section 109(e) and a debtor's schedules; *Id.;* (2) Chapter 13 eligibility should be determined quickly and efficiently so as not to delay case administration; *Id.,* at 756–57; and (3) a debtor's schedules are subscribed under penalty of perjury.

claims did not exceed $295,000.[4] Under those facts, the Debtors fit within Section 109(e)'s secured debt limitation on Chapter 13 eligibility.[5]

■ There is one additional argument, alluded to but not specifically articulated by the Movant, which merits further discussion. In the present posture of this case, Westport has a deemed allowed claim in the amount of $222,175.00 [6] which, contrary to the Debtors' scheduling, may render RECOLL an undersecured, rather than an unsecured, creditor.[7] A good faith argument might be made that *Nobelman v. American Savings Bank*, — U.S. —, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), compels the treatment of such an undersecured claim as a fully secured claim for the purposes of Chapter 13 eligibility. Treating the Westport claim in this manner arguably brings the Debtors' aggregate secured debt over the $350,000 ceiling of Section 109(e).

However, this Court does not read *Nobelman* to assail the unambiguous claim bifurcation mechanics of Section 506(a) in the context of, *inter alia*, a Section 109(e) eligibility determination. In fact, *Nobelman* endorses the use of Section 506(a) to value the secured and unsecured components of an undersecured claim. Rather, *Nobelman* focuses upon the permissible modification of an undersecured creditor's *"rights"* attributable to

its interest in a subject property, not upon the valuation of the various components of its claim. *Id.*, at —, 113 S.Ct. at 2110. Therefore, the implications of *Nobelman* do not alter the analysis of this decision.

## IV. CONCLUSION

Because the bifurcation principles of Section 506(a) govern this contested matter, and the Debtors' sworn valuation statements are unchallenged, the secured debt ceiling of Section 109(e) has not been exceeded in this case.

Accordingly, IT IS HEREBY ORDERED that People's Bank's "Motion to Dismiss Chapter 13 Proceedings" is DENIED.

---

4. Even if all of the Debtors' petition date real and personal property was subject to creditors' security interests, they would still qualify for Chapter 13 since the value of all of the Debtors' property interests was scheduled as $333,610 ($301,000 (total real property) plus $32,610 (total personal property)).

5. Though not essential to a resolution of the instant motion, it appears that the Debtors are eligible for Chapter 13 relief vis-a-vis the $100,000 unsecured debt ceiling as well. Although the deficiency portions of claims secured by estate property are deemed unsecured under Section 506(a) for purposes of Section 109(e) eligibility, *e.g., Brown & Co. Securities Corp. v. Balbus (In re Balbus)*, 933 F.2d 246, 247 (4th Cir.1991); *Miller v. United States*, 907 F.2d 80, 82 (8th Cir.1990); *see also In re Prosper*, 168 B.R. 274, 278 (Bankr.D.Conn.1994); *In re Toronto*, 165 B.R. 746, 754 (Bankr.D.Conn.1994) (collecting cases), when there has been a previous discharge of personal liability on such claims, the *debtors* do not *"owe . . . unsecured debts"* in connection with such claims. 11 U.S.C. § 109(e) (emphasis

supplied); *see Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

6. Bankruptcy Code Section 501(a) provides that "[a] creditor . . . may file a proof of claim." Section 502 then provides, in pertinent part, that a "claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Federal Rule of Bankruptcy Procedure 3001 instructs, in relevant part, that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R.Bank.P. 3001(f). As previously noted, neither the Debtor nor any other party in interest has filed an objection to the Westport claim, and accordingly, that claim is presently deemed allowed in this case.

7. There is $2,193.19 equity for the RECOLL position (Scheduled value ($295,000) minus Westport deemed allowed claim ($222,175) minus scheduled People's claim ($70,631.81)).